UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM J. RICHTER, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 3492 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| JACQUELINE MITCHELL, RICHARD ORENSTEIN, JOHN TROST, STEVEN NEWBOLD, and WEXFORD HEALTH SOURCES, INC., | ) ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

William J. Richter, an Illinois prisoner, brought this suit under 42 U.S.C. § 1983 against Wexford Health Sources and several prison doctors, claiming deliberate indifference to his serious dental needs during his confinement at Menard and Stateville Correctional Centers. Doc. 16. With discovery closed, Defendants move for summary judgment. Docs. 94, 102. The motions are granted as to Dr. Steven Newbold, Dr. Jacqueline Mitchell, and Wexford, and are denied as to Dr. John Trost and Dr. Richard Orenstein.

**Background**

The court recites the facts as favorably to Richter as the record and Local Rule 56.1 allow. *See Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Gates v. Bd. of Educ. of Chicago*, 916 F.3d 631, 633 (7th Cir. 2019).

In January 2016, Dr. Mitchell—a Stateville dentist employed by the Illinois Department of Corrections ("IDOC")—extracted one of Richter's teeth. Doc. 109 at ¶ 2, 8; Doc. 117 at 1; *see Karim v. Obaisi*, 2017 WL 4074017, at *2 (N.D. Ill. Sept. 14, 2017) ("Dr. Jacqueline

1

Mitchell [was] the Lead Dentist at Stateville and an IDOC employee … ."). The extraction was difficult, requiring 60 to 90 minutes of pulling, yanking, and digging. Doc. 109 at ¶ 10; Doc. 119 at ¶ 1. Shortly thereafter, Richter began having trouble opening his jaw, hearing his jaw "pop[]" or "click[]" when opened, and feeling pain in his jaw, eye, and head. Doc. 119 at ¶¶ 2-3. Those are symptoms of temporomandibular joint ("TMJ") disorder—for which Richter later received a diagnosis, *id*. at ¶¶ 29-32—caused by the tooth extraction. *Id*. at ¶ 23; Doc. 109 at ¶¶ 44-46. Richter does not, however, assert a claim against Dr. Mitchell for causing his TMJ disorder. Doc. 111 at 15 ("Defendants misconstrue Plaintiff's claims to include that Dr. Mitchell is liable for the extraction of the tooth that caused Plaintiff's TMJ disorder.").

Richter's complaints about his jaw, along with a February 2016 x-ray that revealed a fracture, prompted Dr. Mitchell and Dr. Orenstein—the Stateville dental clinic supervisor and a Wexford employee, Doc. 108 at ¶ 11; Doc. 95-1 at 9-10 (8:22-9:6)—to start a treatment plan. Doc. 119 at ¶¶ 4, 9; Doc. 108 at ¶¶ 13-14, 20. The "conservative" or "palliative" plan included painkillers; muscle relaxers; physical therapy and jaw exercises; heat packs applied to the side of Richter's face; a soft diet permit, which allowed him to receive soft foods he could chew more easily; and a tray permit, which allowed him to bring food back to his cell so he could eat more slowly. Doc. 119 at ¶¶ 4, 10, 12-13; Doc. 109 at ¶¶ 17-19, 26-27, 30-31; Doc. 108 at ¶¶ 14, 16, 18-21. Richter concedes the propriety of that care. Doc. 111 at 12 (conceding that Dr. Mitchell and Dr. Orenstein "provided treatment for Plaintiff's symptoms consistent with the standard of care … prior to his transfer to Menard" in September 2016); *id*. at 13 (same); Doc. 119 at ¶ 25 (describing treatment meeting the standard of care as including "taking smaller bites of food, a soft diet … , warm compresses … , jaw exercises, … muscle relaxants, … and [painkillers] for inflammation").

In September 2016, Richter was transferred from Stateville to Menard, where Dr. Trost, a Wexford employee, was the Medical Director. Doc. 109 at ¶ 32; Doc. 108 at ¶ 27; Doc. 95-2 at 6 (5:8-5:22). Richter saw Dr. Trost two or three times and explained what was wrong with his jaw, but Dr. Trost told him that Menard was not a "medical friendly facility" and that he would not receive the same treatment he had received at Stateville. Doc. 108 at ¶ 29; Doc. 95-4 at 10 (33:8-34:5), 13-14 (48:3-49:17). In January 2017, Dr. Trost wrote Richter two prescriptions, including for a painkiller. Doc. 108 at ¶ 28.

Dr. Newbold was Menard's Chief Dental Director. *Id*. at ¶ 30. He reviewed Richter's chart and file, *id*. at ¶¶ 31-33; performed an examination and ordered x-rays, *id*. at ¶ 34; and reviewed the x-rays, which provided "no radiographic evidence … to support [Richter's] symptoms," *id*. at ¶ 40. Dr. Newbold nonetheless repeatedly renewed Richter's soft diet permit. *Id*. at ¶¶ 34, 37, 39, 43. He also "tried to give [Richter] a tray permit, but [Richter] was not allowed to take his food tray back to his cell to finish eating" under Menard policies. Doc. 119 at ¶ 15; Doc. 108 at ¶ 34 (Richter's citation to Dr. Newbold's testimony that, "at Menard, there was no such thing as feed in cell"). Richter had already received a prescription for painkillers, so Dr. Newbold did not need to write another one. Doc. 108 at ¶ 38.

Richter's treatment at Menard did not "include heat packs … or muscle relaxants." *Id*. at ¶ 42. Dr. Newbold determined that those treatments were not clinically indicated, based on his observation during two in-person examinations that Richter was able to open his mouth fully. *Id*. at ¶¶ 35-36, 45-46. In fact, Richter could *not* open his mouth fully, *ibid*., meaning Dr. Newbold was wrong in that respect.

Richter was transferred from Menard back to Stateville in late May 2017. *Id*. at ¶ 5; Doc. 109 at ¶ 33. He asked Dr. Mitchell to restart the palliative treatment plan he had previously

3

received there, "but she was leaving Stateville and just wanted to brush it off on Dr. Or[e]nstein." Doc. 119 at ¶ 16 (internal quotation marks omitted). In late July 2017, Dr. Mitchell left Stateville. Doc. 109 at ¶ 35.

Dr. Orenstein continued to see Richter. Doc. 119 at ¶ 18. In an August 2017 visit, Dr. Orenstein denied Richter a tray permit, stating there was "[n]othing noted" requiring one. Doc. 108 at ¶ 23. The basis for that determination is unclear, but context suggests that Dr. Orenstein might have reviewed Richter's February 2016 x-rays and concluded that they were "normal." *Id*. at ¶¶ 20, 23; Doc. 95-1 at 50-51 (49:14-50:12). In two 2018 exams, Dr. Orenstein noted that Richter continued to experience jaw pain and problems. Doc. 108 at ¶¶ 24-25. Dr. Orenstein saw Richter for a final time in December 2020, when an exam and x-ray revealed no positive dental findings. *Id*. at ¶ 25. Neither side cites evidence indicating whether Richter received palliative care other than a tray permit—such as painkillers, heat packs, and muscle relaxers—at Stateville from 2017 through 2020. Doc. 118 at 4, 8; Doc. 111 at 6-7, 12-13.

In March 2020, Richter was referred to the University of Illinois–Chicago ("UIC") hospital, where he was first seen in January 2021. Doc. 119 at ¶ 29. At follow-up visits in April 2021, August 2021, and January 2022, UIC's oral surgeons found that he suffered from TMJ disorder, with symptoms including jaw "clicking" and "popping," and recommended "conservative treatment," including warm compresses, painkillers, massages, stretching exercises, and a soft diet. *Id*. at ¶¶ 30-33. The UIC doctors did not opine that Richter's treatment while incarcerated fell below the pertinent standard of care. Doc. 109 at ¶ 6.

## Discussion

"If prison medical staff exhibit deliberate indifference to an inmate's serious medical condition, they subject h[im] to unnecessary and wanton pain and suffering and thereby run afoul

of the Eight Amendment." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). "To establish an Eighth Amendment claim for deliberate indifference to serious medical needs, … [t]he plaintiff must prove that he suffered from (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019) (internal quotation marks omitted). Only Dr. Mitchell contests the first element, Doc. 103 at 12, but because she is granted summary judgment on other grounds, the court will assume without deciding that Richter's dental needs were objectively serious.

As to the second element of Richter's claim, "[t]o establish deliberate indifference, a plaintiff must show that the defendant '*actually* knew of and disregarded a substantial risk of harm.'" *Mitchell*, 895 F.3d at 498 (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc)); *see also Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017) ("A failure to act in the face of an obvious risk of which the official *should* have known is insufficient to make out a claim."). Whether a defendant acts with deliberate indifference "is measured subjectively: The defendant must know of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). "By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment." *Ibid.* (quoting *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016)). That said, "if a risk from a particular course of medical treatment (or lack thereof) is obvious enough, a factfinder can infer that a prison official knew about it and disregarded it." *Petties*, 836 F.3d at 729. In that circumstance, a "medical professional's treatment decision must be such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did

5

not base the decision on such a judgment." *Ibid.* (internal quotation marks omitted). The court "look[s] at the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs." *Id.* at 728.

## I. Menard Medical Providers

### A. Dr. Trost

Dr. Trost advances a single argument in seeking summary judgment: he "did not have any involvement with the condition or claim(s) at issue in this case." Doc. 96 at 7; Doc. 118 at 10-11. "A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *See Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) (citation omitted). But Dr. Trost's involvement in Richter's dental care is genuinely disputed, as Richter testified that he saw Dr. Trost two or three times, and that those visits included discussion of and requests for dental treatment that Dr. Trost failed to address appropriately. Doc. 108 at ¶ 29; Doc. 95-4 at 10 (33:8-34:5); *id.* at 13-14 (48:3-49:17). Other evidence supports Dr. Trost's view that he was not involved with the alleged deficiencies in Richter's dental care, Doc. 108 at ¶¶ 27, 29, but at this juncture, the court must accept Richter's version of events.

Having offered no other arguments, Dr. Trost forfeits any alternative grounds for summary judgment. *See Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006) ("As a general matter, if the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision."); *Edwards v. Honeywell, Inc.*, 960 F.2d 673, 674 (7th Cir. 1992) ("When a party moves for summary judgment on ground A, his opponent is not required to respond to ground B—a ground the movant might have presented but did not.") (citation omitted). Richter's claim against Dr. Trost will proceed to trial.

B.  Dr. Newbold

Considering the totality of the treatment he provided to Richter, no reasonable jury could find that Dr. Newbold acted with deliberate indifference. As noted, Dr. Newbold ordered and reviewed x-rays, examined Richter, and repeatedly renewed his soft diet permit. Doc. 108 at ¶¶ 32-34, 37, 39, 40-41, 43. Nonetheless, Richter asserts that the care provided by Dr. Newbold was constitutionally deficient because he did not receive heat packs, muscle relaxants, and a tray permit. *Id*. at ¶ 42; Doc. 111 at 13 ("Plaintiff did not receive hot packs, a tray permit, or any other treatment the entire time he was at Menard.").

The undisputed evidence establishes that Dr. Newbold exercised his professional medical judgment in declining to prescribe heat packs and muscle relaxants, precluding any finding of deliberate indifference. *See Zaya*, 836 F.3d at 805 ("By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment."). Dr. Newbold observed no limitation on Richter's ability to open his mouth, so he concluded that heat packs and muscle relaxers were not clinically indicated. Doc. 108 at ¶¶ 35-36, 45-46. Taking the facts in the light most favorable to Richter, Dr. Newbold erred because, in fact, Richter could *not* open his mouth normally. *Id*. at ¶¶ 34-36, 44-46. At most, however, that amounts to a mistake in professional judgment, not deliberate indifference. *See Whiting*, 839 F.3d at 662 ("[E]vidence of medical negligence is not enough to prove deliberate indifference. So without more, a mistake in professional judgment cannot be deliberate indifference.") (citations omitted); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices

7

that it calls into question whether the doctor actually was exercising his professional judgment.").

True enough, Richter had previously received heat packs and muscle relaxers at Stateville, Doc. 109 at ¶¶ 17-19, 26, 30-31; Doc. 108 at 14, 16, 20, and UIC doctors recommended palliative care that included warm compresses (though not, apparently, muscle relaxers), Doc. 119 at ¶¶ 30-32. But the fact that other medical providers prescribed heat packs and muscle relaxers does not give rise to a triable issue as to whether Dr. Newbold was deliberately indifferent in declining to prescribe that treatment. *See Petties*, 836 F.3d at 729 ("[E]vidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim."); *Burton v. Downey*, 805 F.3d 776, 786 (7th Cir. 2015) ("[E]vidence that another doctor would have followed a different course of treatment is insufficient to sustain a deliberate indifference claim."). That is particularly true here because TMJ disorder "can be periodic." Doc. 119 at ¶ 26. Thus, even if heat packs and muscle relaxers were clinically indicated while Richter was at Stateville in 2016 or at UIC in 2021, it need not follow that they were so indicated when Dr. Newbold treated him at Menard from September 2016 through April 2017.

As for the tray permit, Dr. Newbold in fact *offered* Richter such a permit. Doc. 119 at ¶ 15; Doc. 95-4 at 16 (58:21-58:22) (Richter's testimony that "[Dr. Newbold] did try to give me a tray [permit]"). But Menard policies did not allow Richter to take food back to his cell, notwithstanding Dr. Newbold's prescription. Doc. 119 at ¶ 15; Doc. 108 at ¶ 34; Doc. 95-4 at 16 (58:22-59:8). Richter does not challenge those policies, and in any event, no evidence suggests that Dr. Newbold formulated or promulgated them. The missing "causal connection or affirmative link between the action complained about and the official sued" defeats Richter's

8

claim insofar as it relates to the tray permit. *Arnett v. Webster*, 658 F.3d 742, 759 (7th Cir. 2011).

Because no reasonable jury could find him deliberately indifferent as to any aspect of Richter's care, Dr. Newbold is entitled to summary judgment.

**II.  Stateville Medical Providers**

**A.  Dr. Mitchell**

Dr. Mitchell is entitled to summary judgment because the undisputed evidence shows she was not responsible for Richter's dental care after he returned to Stateville in May 2017, the only period at Stateville pertinent to his claims. Indeed, Richter's own testimony establishes that Dr. Orenstein had taken over responsibility for his dental care during that period. Doc. 119 at ¶ 16 (Dr. Mitchell "brush[ed] it off on Dr. Or[e]nstein" because "she was leaving"); Doc. 95-4 at 14 (51:5-51:6); (Richter's testimony that Dr. Orenstein "pretty much had took over by that time"); *see also id*. at 10 (36:12-36:19) (Richter's testimony that he could "understand" Dr. Mitchell's not addressing his dental problems "because she was leaving"). Thus, Dr. Mitchell cannot be held deliberately indifferent to Richter's medical needs. *See Arnett*, 658 F.3d at 759-60 ("Dr. Webster left Arnett in the care of other medical personnel, including a staff physician. … [T]he defendants whose medical judgment is properly being questioned [are] … [those] individuals who continued to see Arnett on a regular basis … ."); *cf. Cesal*, 851 F.3d at 723 ("[A] prison official's refusal to indulge an inmate's request to see a specific staff member, when the prisoner is receiving care from other members of the medical staff, is not deliberate indifference.").

Pressing the contrary result, Richter relies on his testimony that the Wexford-employed medical director at Stateville, Dr. Saleh Obaisi, told him that Dr. Mitchell would not approve a necessary MRI or CT scan at an outside facility. Doc. 119 at ¶ 17; *see Walker v. Wexford Health*

9

*Sources, Inc.*, 940 F.3d 954, 957 (7th Cir. 2019) ("Saleh Obaisi, M.D., was a Wexford employee who served as Stateville's Medical Director from August 2012 until his death in December 2017."). As Dr. Mitchell correctly argues, Doc. 119 at ¶ 17; Doc. 117 at 6, that statement is inadmissible hearsay that may not be considered on summary judgment. *See Eaton v. J.H. Findorff & Son, Inc.*, 1 F.4th 508, 512 n.3 (7th Cir. 2021) ("Inadmissible hearsay evidence may not be considered on summary judgment."); *Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 563 (7th Cir. 1998) ("Hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial.") (citation and alteration omitted). Richter offers Dr. Obaisi's out-of-court statement for the truth of the matter asserted, and he does not attempt to explain why it falls within a hearsay exception, Doc. 111 at 6-7, thereby forfeiting the point. *See Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018) ("Because Wong failed to make her evidentiary arguments before the district court made its decision to grant summary judgment, she forfeited those arguments.").

Any such attempt would have failed in any event. Dr. Obaisi was a Wexford employee, and Richter offers his statement against Dr. Mitchell, an IDOC employee, so it does not qualify as a party-opponent admission. *See* Fed. R. Evid. 801(d)(2)(D) ("The statement is offered against an opposing party and … was made by *the party's* agent or employee … .") (emphasis added). And although Dr. Mitchell concedes Dr. Obaisi's unavailability, Doc. 117 at 6 n.1, the statement does not fit within any exception listed in Evidence Rule 804(b). The court therefore disregards Richter's testimony about the MRI or CT scan, leaving no admissible evidence that Dr. Mitchell was deliberately indifferent in denying him care.

**B.     Dr. Orenstein**

As noted, the parties do not clearly identify what treatment Richter received and did not receive at Stateville beginning in May 2017. Doc. 111 at 12-13 (asserting, without citation, that

Dr. Orenstein "refused to put Plaintiff on any treatment plan" and "refused to provide any … palliative care"); Doc. 118 at 8 (denying that assertion, without citation). So the court will focus on Dr. Orenstein's denial of a tray permit, which is the only dispute the parties specifically identify. Doc. 119 at ¶ 18; Doc. 108 at ¶¶ 23-25; *see Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004) ("A court should not be expected to review a lengthy record for facts that a party could have easily identified with greater particularity.").

Dr. Orenstein offers no sufficient medical explanation for why Richter's treatment after his return to Stateville diverged from his earlier palliative treatment, which included a tray permit. Unlike Dr. Newbold, Dr. Orenstein does not point to clinical findings that, even if mistaken, constitute an exercise of professional judgment. To the extent that Dr. Orenstein relies on his analysis of Richter's February 2016 x-ray, Doc. 118 at 8 (citing Doc. 108 at ¶ 23); Doc. 108 at ¶ 23 ("Dr. Orenstein also referenced the prior x-ray study, which was normal."), that explanation is dubious. During Richter's prior stint at Stateville, Dr. Orenstein authorized palliative treatment—including a tray permit—*after* determining that the February 2016 x-ray was "normal." *Id*. at ¶¶ 16, 18-21. A reasonable jury could find that Dr. Orenstein's prior decision to authorize a tray permit "indicates knowledge of necessary treatment he failed to provide" after Richter's return to Stateville in 2017, *Petties*, 836 F.3d at 731, absent some contemporaneous medical justification for that changed approach, *see id*. at 733 (rejecting a "post-hoc rationalization").

Dr. Orenstein offers no other reason for declining to authorize a tray permit after Richter's return to Stateville in May 2017. Doc. 118 at 4, 8; Doc. 108 at ¶ 23. Because Dr. Orenstein has not explained how that decision reflects an exercise of professional judgment, Richter's claim against him will proceed to trial.

11

### III. Wexford

Richter "does not contest" Wexford's summary judgment motion. Doc. 111 at 15. Wexford accordingly is entitled to summary judgment. *See Keck Garrett & Assocs., Inc. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008) ("By failing to present its argument [opposing summary judgment] to the district court, Keck Garrett abandoned its claim.").

### IV. Punitive Damages

Finally, Defendants seek summary judgment on the issue of punitive damages, arguing that Richter adduces "no evidence that any Defendant's conduct was 'motivated by evil motive or intent,' or that it involved 'reckless or callous indifference' to his rights." Doc. 96 at 9 (quoting *Alexander v. City of Milwaukee*, 474 F.3d 437, 453 (7th Cir. 2007)). That argument fails, as "the high deliberate-indifference standard for liability under the Eighth Amendment is not lower than the standard for punitive damages." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 661 (7th Cir. 2021). Thus, Richter's prayer for punitive damages necessarily survives to the same extent as his underlying deliberate indifference claims.

### Conclusion

Defendants' summary judgment motions are granted as to Dr. Newbold, Dr. Mitchell, and Wexford, and are denied as to Dr. Trost and Dr. Orenstein. Richter's claims against Dr. Trost and Dr. Orenstein will proceed to trial.

June 6, 2022

                                        United States District Judge